**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| H.A. and D.A. o/b/o J.A., | Civil Action No.: 2:09-CV-3301 (PGS) |
| Plaintiffs, | |
| v. | **OPINION** |
| TEANECK BOARD OF EDUCATION, | |
| Defendant. | |

**SHERIDAN, U.S.D.J.**

This matter comes before the Court on Defendant's Motion to Dismiss the Complaint pursuant to Federal Rules of Civil Procedure ("Rule") 12(b)(6) and 12(b)(1).[1] Plaintiffs initiated this suit pursuant to the Individuals with Disabilities Education Improvement Act (IDEA), 20 U.S.C. § 1401 et seq.. Plaintiffs allege that Defendant, Teaneck Board of Education (the "Board") failed to provide their son, J.A., with a free appropriate public education ("FAPE") as required by the IDEA.

In the Complaint, Plaintiffs assert that the Court has jurisdiction over this matter pursuant to the IDEA, 20 U.S.C.§ 1415(i)(2)(A) and the New Jersey Administrative Code 6A:14-2.7(v). Plaintiffs seek *de novo* review and reversal of a June 2, 2009, decision by an Administrative Law Judge of the New Jersey Office of Administrative Law (OAL). Plaintiffs allege that they have brought this action "in an effort to correct clear errors of law and secure federal and state educational rights, declaratory relief, and reimbursement rights heretofore denied to the Plaintiffs." (Compl. ¶

---

[1] On February 24, 2010, the Court held oral argument on the motion.

1

6.) Defendants move, pursuant to Rule 12(b)(1) and (b)(6) to dismiss the Complaint because Plaintiffs initiated this action without exhausting required administrative procedures.

**I.**

J.A. is an 11 year old child who was diagnosed with cerebral palsy at the age of 1. J.A. has lived in the Teaneck, New Jersey school district for all years relevant to this action. Plaintiffs, H.A. and D.A., are J.A.'s parents and initiated this action on behalf of their child.

In 2001, J.A. was three years old. He was enrolled in the Teaneck school district and the Children's Therapy Center which is a State approved private school for disabled children. J.A. attended the Children's Therapy Center from 2001 to February 2003, at which time Plaintiffs requested he be removed from the center "because he was being educated in a most restrictive setting with all disabled peers who were academically, socially and emotionally inappropriate for J.A." (*Id.* ¶ 11.)

Plaintiffs allege that on or about February 2003 they met with the Board's Individual Education Program (IEP) Team, and were informed that the Board did not have the capabilities to provide J.A. with the "specialized instruction" necessary. (*Id.* ¶ 12.) Nevertheless, Plaintiffs allegedly enrolled J.A. in kindergarten in Teaneck's Bryant School. Plaintiffs allege that while J.A. attended the Bryant School in 2003-04 he was educated along with students with numerous development concerns, and that J.A. "was not meaningfully mainstreamed with nondisabled peers despite Plaintiffs' request." (*Id.* ¶ 13.)

In 2004, Plaintiffs removed J.A. from the Bryant School and enrolled him at the Yavneh Academy in Paramus, New Jersey. (*Id.* ¶¶ 14-15.) Plaintiffs believed that the Yavneh Academy could offer J.A. the individualized education he needed. (*Id.*) J.A. repeated kindergarten at the

2

Yavneh Academy during the 2004-2005 school year at Plaintiffs' expense, and received some related services from Teaneck. (*Id.*)

In the 2004-2005 school year, J.A. again was enrolled at the Yavneh Academy, Plaintiffs were allegedly informed that "monies that were then paying for J.A.'s related services (Speech, Occupational Therapy and Physical Therapy) had been exhausted as J.A. was then considered a non-public student." (*Id.* ¶ 16.)

On or about April 2005 Plaintiffs met with representatives from the Board to discuss J.A.'s education. (*Id.* ¶¶ 17-18.) Plaintiffs allege that the Board offered a proposed program for J.A. where he would received shortened instruction at Teaneck's Whittier School in the morning and attend the Yavneh program in the afternoon at Plaintiffs' expense. (*Id.*) Plaintiffs allege that the Board never actually provided the instruction it had proposed and failed to create a program adequately addressing the individualized educational needs of J.A. In 2006, Plaintiffs removed J.A. from the Whittier school and enrolled him at the Yavneh Academy full time. (*Id.* ¶ 21.) According to the Complaint, the Yavneh Academy had a "SINAI special education classroom." (*Id.*) For the 2007-2008 year, J.A. was enrolled in the SINAI special education classroom which was wheelchair accessible).[2]

In June 2008, Plaintiffs sought reimbursement for J.A.'s education during the 2008-2009 school year because of the Board's failure to provide J.A. with a "free appropriate public education."

On June 30, 2008, the Board allegedly informed Plaintiffs that because J.A. was enrolled at an out-of-district placement, the district could only be responsible for J.A.'s education if he was re-enrolled in the school district. (*Id.* ¶ 27.) Plaintiffs allege that they re-enrolled J.A. in Teaneck on

---

[2] Hereinafter the Court shall refer to the Yavneh/SINAI program simply as "SINAI."

July 3, 2008, and the district has never taken any action to reimburse Plaintiffs or to respond to their repeated requests. Plaintiffs proceeded to file a due process petition in the New Jersey OAL requesting, among other things, reimbursement of all tuition expenses for J.A. to attend SINAI, development of an IEP by the Board, placement at SINAI, compensatory education and attorney's fees. (*Id.* ¶ 30.)

## II.

On September 23, 2008, Plaintiffs filed a due process petition with the New Jersey OAL seeking, among other things, reimbursement for J.A.'s tuition expenses at SINAI. Plaintiffs sought reimbursement for all expenses, including tuition, for placing J.A. at SINAI for the 2007-2008 school year; and an IEP formally placing J.A. at SINAI for the 2008-2009 school year. The case was assigned to Administrative Law Judge ("ALJ") Daniel McKeown.

On March 20, 2009, the Board filed a motion before ALJ McKeown seeking summary decision. Plaintiffs also moved for partial summary decision with respect to the 2008-2009 school year placement.

On June 2, 2009, ALJ McKeown issued a consolidated order with regard to the motions. ALJ McKeown held that fact-finding was necessary to adjudicate this case. Plaintiffs also moved for recusal of ALJ McKeown, which he denied. Plaintiffs, in arguing for ALJ McKeown's disqualification, allege that "he has exhibited behavior during the course of the proceedings that would have led a reasonable observer to conclude that he was not impartial and unbiased." (Compl. ¶ 45.) Plaintiffs argue that ALJ McKweon's June 2, 2009 Order, as well as denying Plaintiffs' motion for recusal, are final decisions under the IDEA that are reviewable by this Court. (*Id.* ¶ 46.)

The rulings contained in the June 2, 2009 Order are instrumental to this Court's

4

determination of whether it is a final decision. In several instances, ALJ McKweon indicated that additional facts must be determined. ALJ McKweon ruled that:

> Having considered the foregoing facts and the law governing special education, the parents are not entitled to relief as a matter of law because of the Board's asserted failure to provide J.A. with a special program upon his re-enrollment in July 2008. *This record must be developed so that a reasonable determination may be made whether under all the circumstances* the Board knowingly failed to provide that which it is obligated to provide when a child is enrolled who has special needs. The parents had enrolled J.A., unilaterally removed him from enrollment, re-enrolled him, removed him, and re-enrolled him again. If relief is to be granted to the parents for the 2008-09 school year, *the Board must have the opportunity to establish facts that show it honored its obligation under law* and that it otherwise took action immediately upon learning of J.A.'s re-enrollment to justify the lack of action between July 3 and September 28, 2008.

(emphasis added). Further, ALJ McKeown ruled that the issue of "[w]hether SINAI is sectarian is a matter of proof" and that "the issue of public moneys [sic] being paid to a sectarian school for special education tuition needs to be decided *in light of the surrounding relevant circumstances.*" (emphasis added). The ALJ granted the Board's motion to deny payment to Plaintiffs for "unilateral evaluations of J.A." prior to September 2008, but also determined that whether Plaintiffs were entitled to reimbursement for unilateral evaluations of J.A. conducted during 2008-09 "shall be determined by the facts to be developed at hearing." Moreover, the ALJ denied the Board's motion to dismiss the entire matter because of "the absence of facts upon which a conclusion could be reached regarding the lack of cooperation or bad faith."

At the end of the June 2, 2009 Order, ALJ McKeown stated his rulings were final and Plaintiffs posit this is sufficient to bring a suit here. *See* 20 U.S.C.A. §1415(i)(1)(A).[3]

---

[3] Simply because certain issues are finally resolved does not mean they are immediately subject to a federal lawsuit.

5

Plaintiffs believe recusal is appropriate due to the remarks of the ALJ. There are several comments raised. First, Plaintiffs' counsel brought up the year 1939 during an oral argument without enumerating its importance. In response, the ALJ inquired whether counsel was mocking his age, but counsel's reference has a very different connotation. To Plaintiffs' counsel, reference to the year 1939 was a significant year during the Holocaust. It is not clear whether the ALJ understood this. Second, the ALJ inquired about the identify of members of the Board of Directors of SINAI, which Plaintiffs' counsel argues is an inappropriate question about the Board members' names because it equated certain names to a religious preference. And lastly, there is an "off the record" telephone conversation[4] where the ALJ allegedly inquired to Plaintiffs' counsel whether he was "dancing the Horah." ALJ McKeown denied a motion requesting his recusal due to anti-Semitic comments. Plaintiffs filed a review of that denial with the Director of the Office of Administrative Law who denied it "on the ground that only a state or federal court could review said decision." The Director wrote:

> Unlike contested case hearings conducted at the Office of Administrative Law where every ruling by an administrative law judge is subject to review by the head of an administrative agency . . . the decision issued by an administrative law judge in a special education hearing "shall be final" subject only to appeal to the United States District Court or any State court of competent jurisdiction. 20 U.S.C. 1415(I); 34 C.F.R. 300.54. Therefore, in special education hearings, the Director of the Office of Administrative Law does not have jurisdiction to review an order issued by an administrative judge, including one concerning recusal.

The Director of the OAL does not infer that its denial of ALJ's recusal decision is an immediately appealable issue, only that she does not have authority to review any matter raised in a special

---

[4] This alleged conversation was not raised in the motion papers but discussed at oral argument.

education hearing.

### III.

**A.     Exhaustion of Administrative Remedies under IDEA.**

The IDEA was enacted "to ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs." 20 U.S.C. § 1400(d)(1)(A). It requires states to provide disabled children with a "free appropriate public education" ("FAPE"). *Id.* § 1412(a)(1); *Florence County Sch. Dist. Four v. Carter*, 510 U.S. 7, 9 (1993). States must offer "educational instruction specially designed to meet the unique needs of the handicapped child, supported by such services as are necessary to permit the child to 'benefit' from the instruction." *Bd. of Educ. of Hendrick Hudson Central Sch. Dist. v. Rowley*, 458 U.S. 176, 188-89 (1982); *see also* 20 U.S.C. § 1401(9). The program of education offered to the student does not have to be the best available, but must "confer some educational benefit." *Rowley*, 458 U.S. at 200. To this end, a state must conduct "a full and individual initial evaluation" of the child, and develop an Individualized Education Plan ("IEP") before implementation of any special education program. 20 U.S.C. § 1414(a)(1)(A). An IEP is a detailed instruction plan tailored to address the child's educational needs, and serves as the "primary mechanism" to ensure that a disabled child receives a FAPE. *Susan N. v. Wilson Sch. Dist.*, 70 F.3d 751, 756 (3d Cir.1995); *see also* 20 U.S.C. §§ 1401(14), 1414(d). Importantly, an IEP must provide for "significant learning" and confer a "meaningful benefit" to satisfy the requirements of a FAPE. *T.R. v. Kingwood Twp. Bd. of Educ.*, 205 F.3d 572, 577 (3d Cir.2000). The "IDEA's central goal is that disabled students receive an appropriate education, not merely an appropriate IEP." *Ridgewood Bd. of Educ. v. N.E. ex rel. M.E.*, 172 F.3d 238, 250 (3d Cir.1999).

In the context of an IDEA claim, the exhaustion of administrative remedies is a jurisdictional matter and is resolved pursuant to a motion brought under Rule 12(b)(1). *D.A. v. Pleasantville Sch. Dist.*, No. 07-4341, 2009 WL 972605, at *4 (D.N.J. Apr. 6, 2009); *Falzett v. Pocono Mtn. Sch. Dist.*, 150 F. Supp. 2d 699, 701 n.2 (M.D. Pa. 2001). Congress sought a collaborative relationship among parents, Board representatives and state officials. This requires ongoing communication. The Board argues that Plaintiffs' claims for violations of the IDEA, and companion claims, must be dismissed on account of Plaintiffs' failure to exhaust available administrative remedies before filing the instant lawsuit. Courts require exhaustion where the peculiar expertise of an administrative hearing officer is necessary to develop a factual record. *Lester H. by Octavia P. v. Gilhool*, 916 F.2d 865, 869 (3d Cir. 1990).

Generally, under the IDEA, plaintiffs must exhaust their administrative remedies before proceeding with a civil action in federal court. 20 U.S.C. § 1415(f) (1994); *see Pleasantville Sch. Dist.*, 2009 WL 972605, at *4. The IDEA's exhaustion requirements are defined in a comprehensive manner in the statute. First, 20 U.S.C. § 1415(f)-(h) provides for an administrative due process hearing and appeal. Then, subsection (i)(2) is entitled "Right to bring a civil action" and reads as follows:

> Any party aggrieved by the findings and decision made under subsection (f) or (k) of this section who does not have the right to an appeal under subsection (g) of this section, and any party aggrieved by the findings and decision under this subsection, shall have the right to bring a civil action with respect to the complaint presented pursuant to this section, which action may be brought in any State court of competent jurisdiction or in a district court of the United States without regard to the amount in controversy.

20 U.S.C § 1415(i)(2). This provision establishes an exhaustion requirement for IDEA actions.

8

Moreover, subsection (*l*) expands the administrative requirements under IDEA by making it "applicable to actions under federal laws other than the IDEA wherever those actions seek relief 'also available' under the IDEA." *See* 20 U.S.C. §1415(*l*). This subsection "operates to bar all unexhausted suits involving federal law and seeking relief available under the IDEA, even where a suit also seeks relief not available under the IDEA." *Falzett*, 150 F. Supp. 2d. 702 n.3. This provision bars plaintiffs from circumventing the IDEA's exhaustion requirement by taking claims that could have been brought under the IDEA and repackaging them as claims under some other statute. *See Matula*, 67 F.3d 484, 495-96 (3d Cir.1995) (citing the legislative history of § 1415(f)), *abrogated on other grounds by A.W. v. Jersey City Public Sch.*, 486 F.3d 791 (3d Cir. 2007). Thus, it would follow that plaintiff must exhaust administrative remedies prior to initiating a lawsuit.[5] Piecemeal appeal of issues in a single case to a federal court is most often inefficient and ineffective.

ALJ McKeown ordered, *inter alia*, that Plaintiffs' request for summary decision was denied because the court needed to create a factual record to make an informed determination. As stated above, the ALJ ruled that "[t]his record must be developed so that a reasonable determination may be made whether under all the circumstances the Board knowingly failed to provide that which it is obligated to provide when a child is enrolled who has special needs." ALJ McKweon reasonably held that "the Board must have the opportunity to establish facts that show it honored its obligation

---

[5] Even though the policy of requiring exhaustion of remedies under IDEA is a strong one, the Third Circuit has recognized four limited exceptions to the exhaustion requirement. A plaintiff may be exempted from the exhaustion requirements where (1) exhaustion would be futile or inadequate; (2) the issue is purely a legal issue; (3) the administrative agency is not capable of providing the requested relief; and (4) when requiring exhaustion would cause severe or irreparable harm to a party. *Komninos by Komninos v. Upper Saddle River Bd. of Educ.*, 13 F.3d 775, 778-79 (3d Cir. 1994); *accord Pleasantville Sch. Dist.*, 2009 WL 972605, at *4. These exceptions are not warranted here.

under law and that it otherwise took action immediately upon learning of J.A.'s re-enrollment to justify the lack of action between July 3 and September 28, 2008." ALJ McKeown remarked several times throughout his ruling on the necessity to create a factual record in this case. ALJ McKeown never had the opportunity to review all the facts and make determinations of facts and law.

The case law overwhelmingly affirms the importance of allowing the administrative law judge to conduct factual hearings. In *J.H. v. Egg Harbor Township Board of Education*, Civil No. 08-488, 2009 WL 1322514, at *5 (D.N.J. May 11, 2009), the court considered a request from a plaintiff urging that his rights under the IDEA were violated because he was not provided with a "free appropriate education" without a hearing before an ALJ. The District Court held that this type of determination "is of exactly the kind that is properly considered by the due process hearing procedure under New Jersey law" initially. *Id.* Moreover, the District Court in *Egg Harbor* held that the lack of any factual record was fatal to plaintiffs' appeal. *Id.* As the court remarked, "neither order makes a finding of facts that could assist the Court in determining whether the Board of Education violated J.H.'s rights under the IDEA." *Id.* Similarly, there is no final decision here that could assist this Court in making a determination as to J.A.'s rights. ALJ McKeown's order makes it clear that there is outstanding fact-finding that must be completed through hearings and testimony. The administrative record is vitally important to the statutory purpose of IDEA. "That process offers an opportunity for state and local agencies to exercise discretion and expertise in fields in which they have substantial experience. These proceedings thus carry out congressional intent and provide a means to develop a complete factual record." *Komninos by Komninos*, 13 F.3d at 779. The Third Circuit has held "that IDEA mandates resort in the first instance to administrative hearings so as to develop the factual record and resolve evidentiary disputes concerning, for example, evaluation,

classification, and placement." *Matula*, 67 F.3d at 496; *accord Falzett*, 150 F. Supp. 2d at 702 ("Such an exhaustion requirement enables the agency to develop a factual record, to apply its expertise to the problem, to exercise its discretion, and to correct its own mistakes, and is credited with promoting accuracy, efficiency, agency autonomy, and judicial economy.")*; Pleasantville Sch. Dist.*, 2009 WL 972605 at *5.

Plaintiffs repeatedly request that this Court grant them relief as a matter of law. According to Plaintiffs, ALJ McKweon based his decision on "improperly inferring conclusions from the disputed facts (without any testimony)." (Compl. ¶ 34.) The need for a factual record, comprehensively developed at the administrative level, is important.[6] In the end, a factual hearing must take place. The ALJ expressly made it clear that developing a factual record was necessary to address Plaintiffs' issues. This is in accord with Congressional intent that such hearings be addressed at the administrative level initially.

**B.     Plaintiffs' Motion for Recusal.**

More troubling, Plaintiffs allege that ALJ McKeown has exhibited a biased behavior which requires recusal from this matter. As previously noted, Plaintiffs allege certain anti-Semitic statements that require recusal (see p. 6 of this Opinion). Like other courts, I "have carefully reviewed the record also with this issue in mind because [I] recognize that these are serious allegations, never to be taken lightly when raised in the course of a litigation." *D.B. v. Ocean Bd. of Ed.*, 985 F. Supp. 457, 538 (D.N.J. 1997). Nevertheless, the matter of recusal like all facts and issues should occur with all other issues after administrative remedies are exhausted. *See id.* at 538.

---

[6] Additionally, Plaintiffs' opposition brief is filled with excessive footnotes (describing at length the factual import of thirty-one attached exhibits), which made the brief longer than permitted under the Court's local rules. L.R. 7.2(d).

The Court reviewed the September 9, 2010, transcript, which concerns the recusal motion, and without making a decision I have two observations. They are: (1) there is a need for further factual details about one conversation where Mr. Inzelbuch referred to the year 1939. Mr. Inzelbuch referred to it as a significant year in the Holocaust. Unfortunately, it is unclear whether the ALJ understood same, because the ALJ interpreted the comment as being ridiculed by Mr. Inzelbuch about his age. The ALJ and Mr. Inzelbuch should memorialize their thoughts; and (2) Mr. Inzelbuch claims in an off the record conversation, the ALJ inquired whether Mr. Inzelbuch was "dancing the Horah." Since the comment was not discussed during the motion, Mr. Inzelbuch and the ALJ should confront this allegation and factually set forth what occurred.

The *D.B.* court determined that the assertions of bias by the ALJ went hand in hand with the "result which the ALJ reached, and the manner in which he reached it." *Id.* at 538-39. The District Court concluded that "most of the arguments of the district which allege bias on the part of the ALJ also go to the merits of the appeal." *Id.* at 539. Likewise, Plaintiffs here make several allegations but they are best addressed when our independent review of the entire record occurs.

The District Court in *D.B.* engaged in an extensive review of the record and discussed the avenues of redress available following a denial of a motion to recuse an administrative law judge. *Id.* at 539 n.65. It drew a parallel with the federal procedure, where "denial of a motion to recuse by a judge of the federal district court has been reviewed by our court of appeals both on appeal after final decision in the case, and in extraordinary circumstances by means of a petition for writ of mandamus." *Id.* Here, there is no developed factual record for the court to review. In fact, the ALJ's ruling concluded that a factual record was needed to conclude whether J.A.'s rights have been violated. Moreover, Plaintiffs' conclusory allegations of bias and prejudice are tied up with the

ALJ's handling of the merits of this case. It is best to wait until independent review occurs after administrative remedies are exhausted.

The Third Circuit has held that "failing to exhaust all administrative remedies would not only discredit the detailed procedures outlined in the statute but also would be contrary to Congress' intent that needs of children are best met by having the parents and local education agency work together." *Pleasantville Sch. Dist,* 2009 WL 972605, at *4 (citing *Komninos by Komninos,* 13 F.3d at 778). Protecting a child's right to education is the most important of obligations, and that obligation is best served by this Court allowing for a full and comprehensive administrative factual record to be developed.

## IV.

For the reasons discussed above, the Board's motion to dismiss is granted without prejudice, for lack of subject matter jurisdiction. Because the Court is granting the Board's motion based upon subject matter jurisdiction, it will not address the merits of the Board's motion under Rule 12(b)(6). The matter is remanded to the Office of Administrative Law to develop a full record including findings of fact and conclusions of law.

*s/Peter G. Sheridan*
PETER G. SHERIDAN, U.S.D.J.

March 10, 2010